## THOMPSON *v.* PETERS

1. DEATH—WRONGFUL DEATH—REMARRIAGE.

   Fact of plaintiff's remarriage in an action under the wrongful death act to recover damages for the death of her previous husband was totally immaterial to any issue where there was no question of infidelity before the death of the husband nor any question of credibility which would properly relate to her remarriage (MCLA § 600.2922).

2. DEATH—WRONGFUL DEATH—REMARRIAGE—MOTION TO SUPPRESS —ACCRUAL OF ACTION.

   Upon motion made before trial, in an action under the wrongful death act to recover damages for the death of plaintiff's previous husband, the fact of her remarriage, and evidence arising from it, reflecting upon her situation, financial and otherwise, after her previous husband's death, should be withheld from the jury, absent a proper showing of its relevancy and materiality to some issue or issues in the case because the cause of action for wrongful death and damages resulting from it accrues when that death occurs and the remarried plaintiff's new husband is not a party to the action (MCLA § 600.2922).

3. DEATH—WRONGFUL DEATH—REMARRIAGE—RELEVANCY.

   Disclosure of plaintiff's remarriage and evidence presented in relation to it, in an action under the wrongful death act to recover damages for the death of her previous husband, cannot be said not to have had an adverse effect upon the jury in its consideration of the question of liability and consequent damages where the fact of the remarriage was without relevancy to the action (MCLA § 600.2922).

REFERENCE FOR POINTS IN HEADNOTES

[1–3] 22 Am Jur 2d, Death §§ 67, 164.

Appeal from Calhoun, Creighton R. Coleman, J. Submitted Division 3 May 6, 1970, at Grand Rapids. (Docket No. 7,203.) Decided September 30, 1970.

Complaint by Sharon Thompson, administratrix of the estate of Harold Jack Thompson, against Charles W. Peters, administrator of the estate of William J. Collins, for damages for wrongful death caused by an automobile accident. Judgment for defendant. Plaintiff appeals. Reversed and remanded.

*Hatch & Hatch,* for plaintiff.

*James & Dark,* for defendant.

Before: HOLBROOK, P. J., and BRONSON and MUNRO,* JJ.

HOLBROOK, P. J. The question which is determinative of this appeal is whether the trial court improperly revealed to the jury the fact that plaintiff, the widow of plaintiff's decedent, had remarried after commencement of the present suit.

This is an action brought by Sharon Thompson (Warsop), administratrix of the estate of her deceased husband, Harold Jack Thompson, against Charles W. Peters, administrator of the estate of William James Collins, for recovery under the Michigan wrongful death act, MCLA § 600.2922 (Stat Ann 1970 Cum Supp § 27A.2922). This cause concerns an automobile accident which occurred on March 17, 1967, on US 27, north of Tekonsha, Michigan, in which plaintiff's decedent, a guest passenger[1] in an automobile owned and operated by defend-

---

* Circuit judge, sitting on the Court of Appeals by assignment.
[1] MCLA § 257.401 (Stat Ann 1968 Rev § 9.2101).

ant's decedent, was killed instantly when the automobile struck a tree. Defendant's decedent was also instantly killed. This action was tried in Calhoun County Circuit Court, on December 12 and 13, 1968, resulting in a jury verdict, by vote of ten to two, of no cause of action in favor of defendant, entry of judgment accordingly, and denial of plaintiff's motion for a new trial, from which plaintiff appeals.

In May 1968, after suit was commenced, and before trial, plaintiff remarried. On October 16, 1968, plaintiff filed a motion which requested of the court in part as follows:

" * * * to instruct the defendant and his counsel as set forth below on the following grounds:

"1. Since it is immaterial to this action whether or not:

"(a) plaintiff, the decedent's widow, has remarried and that she is now known as Sharon Warsop;

"(b) There is a possibility or even a probability of plaintiff's remarriage;
the defendant is precluded from using any pleading, testimony, remarks, questions or arguments which might inform the jury of plaintiff's remarriage or of her present married name or that there might exist a possibility or a probability of her remarriage.

"2. Were any of the above facts made known to the jury, it would be highly improper and prejudicial to plaintiff, even if the court were to sustain an objection and instruct the jury not to consider such facts for any purpose. * * *

"Wherefore, plaintiff prays that this court enter an order instructing the defendant and his counsel not to mention, refer to, interrogate concerning or attempt to convey to the jury in any manner either directly or indirectly the fact that plaintiff has remarried and that she is now known as Sharon Warsop; to further instruct the defendant and his counsel not to make any remark, put any question,

or make any argument suggesting the possibility or
the probability of plaintiff's remarriage; and to
further instruct the defendant and his counsel not
to make any reference to the fact that this Motion
has been filed and granted and to warn and caution
each and every one of their witnesses to strictly
follow these instructions."

The court, in a written finding, denied the fore-
going motion, stating in part:

"   *   *   *   it would appear that a jury could
very readily follow a court's instruction that they
were not to use the fact of remarriage *in mitigation
of damages* and, in fact, are not to consider that
fact as being relevant to the consideration of dam-
ages.

"On balance, it would appear to this court that
the facts should be placed before the jury, that if
there has been a remarriage that it be allowed to
be shown (it probably has been published in the
local newspaper, hundreds of friends and neighbors
know of it, credit institutions and general businesses
have been advised of it, etc.), that the argument or
inference by defense attorney that it should be used
in mitigation be prevented (mistrials can be granted,
even during the course of a trial), and that the jury
be instructed that such fact shall not be used in
mitigation of damages.  The reasons for so charging
could even be explained to the jury.  Juries handle
technical instructions far more detailed and com-
plicated than would be such an instruction."

At the commencement of the *voir dire* examination
of the jury, the court stated the following:

"First, I am going to ask you if any of you know
any of the parties to this case.  Do any of you
know the plaintiff, Sharon Thompson, now known
as Mrs. Warsop?  She was remarried May 25, 1968.
She sits at counsel's table here.  Now you will notice
I said she was remarried.  I will give you instruc-

tions at the conclusion of the case, that you are not to use such a fact in mitigation of damages and we will explain that to you, but the fact is she is remarried should be instantly dismissed from your minds as having anything to do with this case."

At the trial of this cause, plaintiff was sworn as Sharon Warsop. Upon direct examination of plaintiff, it was shown that, during her marriage to Harold Jack Thompson, she was employed as a waitress for one year, returning to that work on weekends after the birth of a child, and that, while living in a house owned by her parents, she and Thompson had started saving money for a house of their own, by having $25 per week taken out of his paycheck and put into the credit union at his place of employment. On cross-examination of plaintiff it was brought out that she no longer was employed and that she presently owned a home.

Examination of the widow of defendant's decedent, by defense counsel, revealed that she had not remarried, and that she, both before her husband's death and at the time of trial, was employed.

Upon the conclusion of the proofs, during the course of which plaintiff was granted a continuing objection to evidence relating to the fact of remarriage, the court, in its instructions to the jury, stated in part:

"There has been some showing that the widow of Mr. Thompson remarried sometime after this lawsuit was started. I charge you that this is not a factor you should consider in determining what are appropriate damages in this case. This cause of action arose on March 17, 1967, and the damages, if any, which are fixed by you, are determinable as of that time. The fact of her remarriage may not be used by you to diminish or mitigate the damages

if any, which plaintiff may otherwise be entitled to receive."

Plaintiff, in her motion for a new trial, alleged that the trial court committed error in permitting the jury to be informed of plaintiff's remarriage; that the order of the court allowing disclosure of the fact of plaintiff's remarriage constituted an abuse of discretion, preventing a fair trial; and that the conduct of defendant's counsel with regard to plaintiff's remarriage, whether contrary to or consistent with the court order, prevented a fair trial. The court denied this motion in a written finding.

It is plaintiff's contention that the fact of remarriage should not have been presented to the jury where her remarriage has not been shown to be, in some manner, relevant to the proceedings. Plaintiff contends that disclosure of remarriage may be prejudicial to a widow who has remarried. The fact of remarriage and evidence pertaining to the new marriage brings about a comparison between the situations, including the financial well-being of the remarried widow and the widow who has not remarried. This comparison is unrelated to the question of liability and damages arising from the accident antedating plaintiff's remarriage. In the case at hand, the fact of plaintiff's remarriage was totally immaterial to any issue, there having been no question of infidelity before the death of plaintiff's husband nor any question of credibility which would properly relate to her marriage.

Plaintiff further maintains, and correctly so, that, in several of the cases from other jurisdictions cited by the trial court in its findings denying plaintiff's motion for a protective order on the question of remarriage, evidence of remarriage by a surviving spouse has been admitted only where the circum-

stances differed greatly from those presented in this case. In the cases cited, such evidence was allowed (1) when coupled with evidence of previous marital difficulties in an action for loss of consortium, (2) for purposes of impeachment, where the question of remarriage was not objected to and the spouse answered in the negative when asked if she had remarried, and (3) where both marital misconduct and subsequent remarriage by a surviving spouse were involved. Other cases referred to by the trial court in its findings have simply adhered to the general rule that, in a wrongful death action, the fact of remarriage is not to be considered in mitigation of damages, such evidence being inadmissible and properly excluded. See 87 ALR2d 252.

Plaintiff asserts that questions asked of her by defense counsel which revealed that, at the time of trial, she owned a home and was no longer employed would be inadmissible even in a jurisdiction which permits the isolated fact of remarriage to be made known. In *Dubil* v. *LaBate* (1968), 52 NJ 255 (245 A2d 177), cited by defendant, it was held that, while suppression of the fact of remarriage would be offensive to the integrity of the judicial process were a plaintiff permitted to misrepresent her marital status to the jury after taking an oath to be truthful, a defendant may not inquire into the details of the remarriage, such as the earnings of the new spouse or the birth of a child, nor offer evidence concerning the remarriage.

Defendant asserts that to prevent the fact of remarriage from being made known to the jury is to place little credence in the jurors' oaths to decide a case without sympathy, bias, or prejudice and that to suppress mention to a jury of a widow's present name where the widow has remarried is tantamount to resorting to subterfuge to deceive the jury.

In *Bunda* v. *Hardwick* (1965), 376 Mich 640, dealing with an action for the wrongful death of plaintiff's decedent, defendant attempted to introduce a birth certificate of a child born to plaintiff from which he claimed the jury might infer that plaintiff had remarried. In Mr. Justice SOURIS' opinion, it was stated pp 655, 656:

"In an annotation, 'Remarriage of surviving spouse, or possibility thereof, as affecting action for wrongful death of deceased spouse', 87 ALR2d 252, 253 (1963), it is stated:

" 'All of the American jurisdictions which have considered the question, except Michigan, hold that the surviving spouse's remarriage, or the possibility thereof, does not affect the damages recoverable in an action for wrongful death of the deceased spouse. Two reasons are offered in support of this rule: (1) the cause of action arises at the time of the decedent's death, and the damages are determinable as of the same time; and (2) the rule providing for mitigation of damages on account of the surviving spouse's remarriage is highly speculative, because it involves a comparison of the prospective earnings, services, and contributions of the deceased spouse with those of the new spouse.'

" * * * evidence of plaintiff's remarriage or the *probability* of her remarriage is irrelevant and, therefore, was properly excluded, in determining the damages she suffered upon the death of her spouse." (Emphasis in *Bunda*.)

The *Bunda* Court did not, however, rule on the precise question under consideration here, *i.e.,* where, by motion, a protective order is sought in advance of trial to exclude mention to the jury of the fact of a party's remarriage should the motion be granted by the trial court not only for the purpose of insuring a proper determination of damages, but also to safeguard against the possibility that the fact of

remarriage will influence the jury in its determination of liability. In the case at hand, the trial court while emphasizing to the jury, in its instructions, that the fact of remarriage was not to be considered on the question of damages, did not, likewise, stress the fact that remarriage was not to be considered on the question of liability; the court merely cautioned the jury, at the time of the *voir dire* examination, to dismiss the fact of remarriage from mind as having nothing to do with the case.

We hold, as a logical extension of *Bunda* v. *Hardwick, supra,* that, in a case such as the present one, upon motion made before trial, the fact of a party's remarriage and evidence arising from it, reflecting upon the party's present situation, financial and otherwise, should be withheld from the jury, absent a proper showing of its relevancy and materiality to some issue or issues in the case.

In view of the rule of law that the cause of action for a wrongful death and damages resulting from the death accrues when the death occurs, *Coury* v. *General Motors Corporation* (1965), 376 Mich 248, and in view of the fact that, in the instant case, plaintiff's name was Sharon Thompson at the date of death of her decedent, evidence of her subsequent remarriage should, under the circumstances presented, be considered immaterial and be excluded.

*Helmick* v. *Netzley* (1967), 12 Ohio Misc 97 (229 NE2d 476), cited by plaintiff, is relevant and is quoted with approval as to the procedure to be followed. That court states, pp 476, 477:

"At pre-trial * * * counsel for plaintiff orally moved the court that upon the trial of this wrongful death action before a jury, that plaintiff, widow of the deceased, having remarried, when being sworn, be permitted to give her former name of Dorothy Birkhead; that she be so identified throughout the

the entire trial, and that counsel for defendant be directed not to indicate the remarriage and to refer to the widow by her previous name.

"The law of Ohio is clear that remarriage is not admissible in diminution of damages and the motion is predicated thereon to prevent the intent of the rule of law from being subverted.

"The court believes that such motion is a reasonable request and accordingly sustains the same in this to-wit:

"1—That in so far as all counsel for the parties and the parties herein are concerned the plaintiff shall, before the jury, be identified and referred to as 'Dorothy Birkhead.' She may not be cross-examined to show that her name is not Mrs. Birkhead.

"2—Plaintiff's present husband, along with the other parties, will be presented to the jury for the purpose of determining whether the jurors know the present husband, without indicating his identity or in any way disclosing that she has again married.

"The foregoing ruling number 1 is to prevent possible diminution of damages as a result of the marriage and the court observes that such a disclosure would in all common probability accomplish just that.

"It is equally clear that the jurors must be asked whether or not they know the second husband, because should there be such an acquaintanceship on the part of any juror such juror should be disqualified. Thus every effort will be made to avoid that kind of contingency.

"In the event a question of credibility in reference to plaintiff's names arising any time during trial counsel for defendant may not go into it, however, if such question arises which the court believes may be vital to the defense, or be prejudicial to the defendant, then only after consultation with the court, without the hearing of the jury, will the court decide such issue.

"In the meantime counsel for the defendant is to refrain from making any disclosure."

See, also, 11 Am Jur Trials, Evidence of Remarriage, § 45, pp 65–67.[2]

Plaintiff asserts that keeping from the jury the fact of remarriage is comparable to the uniform practice of concealing the fact that a plaintiff or a defendant is insured; and that even though a party may be receiving insurance payments, salary, or other benefits, and may place into evidence medical bills which have been paid in full or in part by a party's insurance carrier, such facts are not disclosed to the jury.

MCLA § 500.3030 (Stat Ann 1957 Rev § 24.13030) states in part:

"In the original action brought by the injured person, or his or her personal representative in case death results from the accident, * * * the insurer shall not be made or joined as a party defendant, nor shall any reference whatever be made to such insurer or to the question of carrying of such insurance during the course of trial."

While the matter of non-disclosure of insurance coverage may be attempted to be distinguished on the ground that the insurer is not a party to the action, it may be said with equal validity that where the question of admissibility of the fact of remar-

---

[2] At pp 65, 66, it is stated:

"Everyone responds to situations of obvious need, and jurors and judges are not exceptions. However, as a practical matter, the remarriage of the widow sharply reduces the sympathetic appeal of her case. Where the widow has remarried, her personal need and the need of the children for financial support may have been satisfied, or at least partly satisfied. Thus, the remarriage will undoubtedly have an effect on the jury in awarding damages, although, as a matter of law, the fact of remarriage may be inadmissible in evidence and immaterial to the jury's determination.

"Under the law of most states the fact of remarriage is inadmissible. However, a practical problem is presented by the remarried widow's appearance in court by the very fact that she has changed her name. If she is sworn in under her new name and if the jury knows this, then the inadmissible fact of remarriage will undoubtedly have its adverse effect."

riage is concerned, the remarried plaintiff's new husband is likewise not a party to the action for the wrongful death of her decedent. The purpose underlying the rule of trial procedure which forbids disclosure of insurance coverage is to prevent the irrelevant fact of coverage from prejudicing the jury and, thereby, affecting the result, or increasing or decreasing the size of the verdict in a given case. As was stated in *Felice* v. *Weinman* (1964), 372 Mich 278, 280:

"The ban of the rule [preventing disclosure of insurance coverage] * * * applies to plaintiffs and defendants—and to their respective counsel—with equal force. Violation thereof places counsel in position where, the point having been timely raised and saved, he must by persuasive showing overcome a presumption that what occurred, whether intentional or otherwise, was prejudicially improper."

On the same basis we hold that disclosure of the fact of remarriage may, in circumstances such as the present ones, be presumed to be prejudicially improper.

We cannot say that disclosure of the fact of remarriage and presentation of evidence relative to the remarriage did not have an adverse effect upon the jury in its consideration of the question of liability and consequent damages. Having determined that the fact of plaintiff's remarriage, being without relevancy to this wrongful death action, should not have been placed before the jury, we reverse and remand for a new trial consistent with this opinion.

Costs to plaintiff.

All concurred.