BRADFIELD v ESTATE OF BURGESS

ESTATE OF STEVENS v ESTATE OF BURGESS

1. Evidence—Death—Wrongful Death—Remarriage of Party—
Relevance—Materiality.

The fact of a party's remarriage and evidence arising from it,
reflecting upon the party's present situation, financial and
otherwise, should be withheld from the jury in a suit for
wrongful death of the party's deceased spouse upon motion
made before trial, absent a proper showing of relevance and
materiality to some issue or issues in the case.

2. Evidence—Wrongful Death—Remarriage of Party—Protec-
tive Order—Jury—Voir Dire.

Denial of a plaintiff's motion, in a suit for wrongful death, for a
protective order to exclude from the jury all references to the
remarriage of the decedent's widow is error where there is no
showing of relevance or materiality of the remarriage to the
issue of loss of companionship; however, voir dire of the jury
may include a question as to the juror's acquaintance with the
widow's new husband, but should not disclose his relationship
with the widow.

3. Damages—Death—Wrongful Death—Loss of Companionship—
Loss of Society.

Loss of society and companionship has always been a compensa-
ble pecuniary loss under the wrongful death act.

4. Statutes—Prospective Application—Legislative Intent.

Statutes are given prospective effect exclusively unless a clear,
unambiguous intent for retroactive application is expressed by
the Legislature.

References for Points in Headnotes

[1, 2] 22 Am Jur 2d, Death §§ 67, 164.

Remarriage of surviving spouse, or possibility thereof, as affecting
action for wrongful death of deceased spouse. 87 ALR2d 252.

[3] 22 Am Jur 2d, Death § 121.

[4, 5] 73 Am Jur 2d, Statutes § 347 *et seq.*

5. Statutes—Wrongful Death—Amendment—Effective Date—Evidence—Widow's Remarriage.

An amendment to the wrongful death statute does not govern a suit for a decedent's death where the amendment takes effect more than 2 years after the death; the statute in effect at the time of the decedent's death controls (MCLA 600.2922[2]).

Appeal from Ingham, Ray C. Hotchkiss, J. Submitted Division 2 April 18, 1975, at Lansing. (Docket No. 21552.) Decided June 24, 1975. Leave to appeal denied, 395 Mich —.

Complaint by David Bradfield, administrator of the estate of Jack I. Stevens, deceased, against the estate of Thomas Burgess, deceased, Burgess Aviation, Inc. and Cessna Aircraft Corporation for wrongful death arising out of an airplane accident. Motion to exclude references to the remarriage of Stevens' widow denied. Plaintiff appeals by leave granted. Defendants cross-appeal. Reversed and remanded.

*Sinas, Dramis, Brake, Turner, Boughton & McIntyre, P. C.,* for plaintiff.

*Cholette, Perkins & Buchanan (Edward D. Wells,* of counsel), for defendant Burgess' estate.

*Warner, Norcross & Judd (John H. Logie,* of counsel), for defendant Burgess Aviation, Inc.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pederson* (by *Leonard E. Nagi),* for defendant Cessna Aircraft Corporation.

Before: Bashara, P. J., and M. F. Cavanagh and D. E. Holbrook, Jr., JJ.

D. E. Holbrook, Jr., J. This action arises out of an airplane accident on November 2, 1969,

wherein plaintiff's decedent, Jack Stevens, was killed. The complaint was filed October 26, 1972, pursuant to the wrongful death act, MCLA 600.2922; MSA 27A.2922, alleging counts of negligence and products liability.

During the interim between the airplane crash and the proposed trial, Jack Stevens' widow remarried and became known as Carol O'Brien. Fearing potential prejudice from a disclosure of this to the jury, plaintiff moved for a protective order to have such information excluded from the jury's consideration, asking that all references, allusions, comments, insinuations, etc., be prohibited. According to plaintiff's arguments, such an order was essential to assure the plaintiff a fair trial free from the taint of irrelevant, and possibly prejudicial, facts. However, plaintiff conceded that during voir dire, the jury could be questioned as to an acquaintance with Dan O'Brien, the second husband of Carol Stevens, without intimating his relationship to her or the cause of action.

The defendants opposed plaintiff's motion. Following a hearing on the motion, the court entered an order to the effect that the jury would be informed of the remarriage by the trial judge and instructed, both at the beginning and the conclusion of the trial, to disregard such information as having no relevancy to the issue of damages. Further, while the jury could be asked about any acquaintanceship with Dan O'Brien on voir dire, the remarriage was not to be the subject of arguments or questioning of witnesses during the trial.

The underlying legal foundation supporting plaintiff's motion is discussed in *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965). Therein the Michigan Supreme Court held that evidence of the remarriage of a widow or the possibility

thereof in a wrongful death action is irrelevant and inadmissible for mitigation of damages.

Accepting and advocating the principle enunciated in *Bunda v Hardwick, supra,* the plaintiff expands on that theory, demanding a consistent and logical extension, *viz.,* entitlement to a protective order precluding any evidence or comments which could create any inference or implication of remarriage. In particular, the aspects necessitating careful consideration are the voir dire of the jury in conjunction with the defendant's rights in securing an impartial and untainted jury, allowing the decedent's widow to testify under oath using her former name (not her name after the remarriage) and the trial judge's informing the jury of decedent's wife's remarriage.

The identical situation as presented in this case was before this Court in *Thompson v Peters,* 26 Mich App 590; 182 NW2d 763 (1970). Although the Supreme Court eventually reversed the ultimate disposition, *Thompson v Peters,* 386 Mich 532; 194 NW2d 301 (1972), it was predicated on the preliminary issue of liability, obviating the necessity of discussing the issue herein and, consequently, neither intimating an endorsement of the Court of Appeals' specific ruling nor discrediting or disavowing such a practice. Thus, the substance of the discussion and opinion in *Thompson v Peters,* 26 Mich App 590; 182 NW2d 763 (1970), remains untarnished and unblemished, subject to sober recognition despite its status as obiter dicta. See *e.g., Cree Coaches, Inc, v Panel Suppliers, Inc,* 384 Mich 646, 650; 186 NW2d 335, 337 (1971).

After a review and analysis of *Bunda v Hardwick, supra,* as well as authorities from other jurisdictions, the Court of Appeals in *Thompson v Peters, supra* at 598, stated:

"We hold, as a logical extension of *Bunda v Hardwick, supra,* that, in a case such as the present one, upon motion made before trial, the fact of a party's remarriage and evidence arising from it, reflecting upon the party's present situation, financial and otherwise, should be withheld from the jury, absent a proper showing of its relevancy and materiality to some issue or issues in the case."

This holding remains entirely in accord with subsequent decisions from other jurisdictions. See *e.g., Wiesel v Cicerone,* 106 RI 595; 261 A2d 889 (1970), *Nichols v Marshall,* 486 F2d 791, (CA 10, 1973), *Bell Aerospace Corp v Anderson,* 478 SW2d 191 (Tex Civ App, 1972), *Smith v Wells,* 258 SC 316; 188 SE2d 470 (1972), *State v Cress,* 22 Ariz App 490; 528 P2d 876 (1974). Finding no showing of relevancy or materiality of plaintiff's remarriage to the issue of loss of companionship we hold it was error for the trial court to deny plaintiff's motion for a protective order. However, voir dire of the jury may still include a question as to the jurors' acquaintance with Dan O'Brien. Such voir dire shall not, however, disclose this relationship to the widow.

Next, the defendant, Cessna Aircraft Company, contends on cross-appeal that the amendment to the wrongful death act, 1971 PA 65, § 1, eff March 30, 1972, altered the law to encompass the fact of remarriage as relevant in awarding damages for loss of companionship. Defendant further maintains that the amendment is applicable to the case at bar.

To properly assess this issue, it is incumbent upon this Court to present a capsule history of damages for loss of companionship in wrongful death cases. The following is a chronological listing of recent decisions and enactments bearing on this issue:

1. In *Wycko v Gnodtke,* 361 Mich 331, 339–340; 105 NW2d 118, 122–123 (1960), the Court stated:

"The pecuniary value of a human life is a compound of many elements. * * * an individual member of a family has a value to others as part of a functioning social and economic unit. This value is the value of mutual society and protection, in a word, companionship. The human companionship thus afforded has a definite, substantial, and ascertainable pecuniary value and its loss forms a part of the 'value' of the life we seek to ascertain."

Thus, loss of companionship was held to be a pecuniary loss.

2. Thereafter, the Legislature, by 1965 PA 146, eff July 12, 1965, amended the wrongful death act relative to the distribution of any recoveries but failed to alter the interpretation set by *Wycko v Gnodtke, supra.*

3. In *Breckon v Franklin Fuel Co,* 383 Mich 251; 174 NW2d 836 (1970), the Court, claiming the discussion of loss of companionship in *Wycko v Gnodtke, supra,* was obiter dicta, held that "pecuniary injury" and "pecuniary loss" as found in the wrongful death statute never included those losses resulting from the deprivation of society and companionship.

4. Following *Breckon v Franklin Fuel Co, supra,* the Legislature enacted 1971 PA 65, eff March 30, 1972, which expressly permitted recovery for loss of society and companionship.

5. Finally, in *Smith v City of Detroit,* 388 Mich 637; 202 NW2d 300 (1972), the Supreme Court reconsidered the entire previous history of this issue and returned to its earlier position in *Wycko v Gnodtke, supra,* that prior to the legislative amendment specifically authorizing recovery for

loss of society and companionship, such losses were recoverable as a pecuniary loss.

Hence, loss of society and companionship has always been a compensable pecuniary loss under the wrongful death act. *Smith v City of Detroit, supra.* The crux of the defendant's claim is whether the plaintiff's recovery for such injuries is pursuant to the amended provision of the wrongful death act which is as follows:

"Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, *under all of the circumstances* to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death. *The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased."* MCLA 600.2922(2); MSA 27A.2922(2). (Emphasis supplied.)

If the statute is applicable, then defendant argues that the phrase "under all of the circumstances" was added to permit evidence of any factors having a bearing on the issue of damages. Obviously, defendant stresses that the remarriage of the plaintiff would definitely be within the ambit of the amended portion.

The cause of action accrued with the death of Jack Stevens on November 12, 1969, *Coury v General Motors Corp,* 376 Mich 248; 137 NW2d 134 (1965); the amendment took effect March 30,

1972; and the complaint was filed October 26, 1972. Since statutes are to be given prospective effect exclusively unless a clear, unambiguous intent for retroactive application is expressed by the Legislature, the amendment herein does not govern the instant action. *Detroit Trust Co v Detroit,* 269 Mich 81; 256 NW 811 (1934), *Olkowski v Aetna Casualty & Surety Co,* 53 Mich App 497, 502–504; 220 NW2d 97, 100 (1974), *affirmed,* 393 Mich 758; 223 NW2d 296 (1974). The statute in effect at the time the action accrued did not provide for such evidence of remarriage. See *e.g., Jeffs v Board of Examiners of Barbers,* 320 Mich 78, 84; 30 NW2d 445, 448 (1948). *In re Miner Estate,* 359 Mich 579, 583; 103 NW2d 498, 500 (1960). Since it is unnecessary toward the disposition of this case we express no opinion as to whether or not the phrase in the 1972 amendment, "under all of the circumstances", encompasses proof of the remarriage of a spouse.

Remanded for trial in accordance with this opinion. Construction of a statute being involved, no costs are awarded.