WOOD v THE DETROIT EDISON COMPANY

Docket No. 77-1149. Submitted December 19, 1977, at Detroit.—Decided May 8, 1978. Leave to appeal applied for.

Cecelia Wood, administratrix of the estate of Raymond Wood, her deceased husband, brought an action in Wayne Circuit Court against The Detroit Edison Company and others for damages for wrongful death. Plaintiff filed a motion *in limine* to exclude references at trial to the fact that she had remarried. The trial court concluded that so long as plaintiff persisted in claiming damages for loss of decedent's society and companionship, the evidence of her remarriage was relevant and admissible. The motion was denied, William J. Giovan, J. Plaintiff appeals by leave granted. *Held:*

Evidence of a spouse's remarriage is inadmissible in a wrongful death action on the issue of damages to the spouse for loss of the decedent's society and companionship. The trial court erroneously denied plaintiff's motion to exclude reference to the remarriage.

Reversed and remanded.

1. DAMAGES—EVIDENCE—DEATH—WRONGFUL DEATH—REMARRIAGE— SOCIETY AND COMPANIONSHIP.

Evidence of a spouse's remarriage is inadmissible in a wrongful death action on the issue of damages to the spouse for loss of decedent's society and companionship.

2. DAMAGES—WRONGFUL DEATH—LOSS OF SOCIETY—LOSS OF COMPAN-IONSHIP—NEGLIGENCE—REMARRIAGE OF PARTY—EVALUATION OF DAMAGES—FINDER OF FACT.

Compensation to the survivor of a marriage relationship for loss of society and loss of companionship in a negligence action is a determination to be made by the trier of fact; permitting the introduction of evidence of another marriage relationship to

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 22 Am Jur 2d, Death §§ 67, 164.

Remarriage of surviving spouse, or possibility thereof, as affecting action for wrongful death of deceased spouse. 87 ALR2d 252.

mitigate such damages would place an imponderable burden upon that evaluation process.

*Lopatin, Miller, Bindes, Freedman & Bluestone* (by *Michael Gagleard)*, for plaintiff.

*Joselyn, Rowe, Jamieson & Grinnan, P. C.,* for defendant Michigan Mutual Liability Company.

*Dice, Sweeney, Sullivan & Feikens, P. C.,* for defendants The Detroit Edison Company, Parson & Company, and Marley Corporation.

Amici Curiae: *Foster, Swift, Collins & Coey, P. C.* (by *David W. McKeague)*, for American Mutual Insurance Alliance.

Before: BASHARA, P. J., and BEASLEY and D. E. HOLBROOK, JR., JJ.

BASHARA, P. J. In a wrongful death action plaintiff brings this interlocutory appeal to obtain review of a trial court order denying her motion *in limine* for a protective order. That motion sought to preclude defendant from referring to or introducing evidence at trial of plaintiff's remarriage. The trial court concluded that so long as the plaintiff persisted in claiming damages for loss of the decedent's society and companionship, the evidence of her remarriage was relevant and admissible.

Defendants urge that determinations of evidential relevancy are within the discretion of the trial court and should be sustained unless there is an abuse of that discretion. Further, the defendants argue, without expository analysis, that remarriage is relevant to ascertaining the extent of damages arising from a loss of decedent's society and companionship. Supportive authority is garnered by defendants from the amendatory lan-

guage of 1971 PA 65, § 1[1] and this Court's recent

---

[1] To gain some appreciation for the effect of this amendment to the wrongful death act, MCL 600.2922; MSA 27A.2922, a brief review of the evolution of recovery for loss of society and companionship and the related evidentiary question of a plaintiff-spouse's remarriage is warranted.

Initially, recovery for wrongful death, in statutory terms, was comprised of "such damages, as, the court or jury, shall deem fair and just, with reference to the pecuniary injury resulting from such death * * * ". MCL 600.2922(2); MSA 27A.2922(2). Pecuniary injury was construed in *Wycko v Gnodtke*, 361 Mich 331; 105 NW2d 118 (1960), to include the element of the decedent's society and companionship.

Five years later the Supreme Court decided *Bunda v Hardwick*, 376 Mich 640; 138 NW2d 305 (1965). Notable for the thoroughness of its analysis and comprehensive reconciliation of prior contrary pronouncements, the *Bunda* Court concluded that evidence of a spouse's remarriage is inadmissible in wrongful death actions.

Following another half-decade, the Supreme Court decided *Breckon v Franklin Fuel Co*, 383 Mich 251; 174 NW2d 836 (1970). Addressing specifically the *Wycko* decision, the Court concluded that any assertions therein tending to permit recovery for loss of society and companionship, were mere dicta. *Id.* at 275; 174 NW2d at 845. The Court went on to hold that, since the term "pecuniary injury" was explicit and did not contemplate loss of society and companionship as an element of recovery, such damages could not be obtained in a wrongful death action. *Id.* at 277–278; 174 NW2d at 845–846. However, the decision in *Bunda*, as to the admissibility of a plaintiff-spouse's remarriage, was not evaluated by the Court.

In the ensuing year the Legislature enacted 1971 PA 65, § 1, which became effective in 1972. It changed the first sentence of MCL 600.2922(2); MSA 27A.2922(2), from:

"(2) Persons entitled to sue; damages, distribution. Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, *with reference to the pecuniary injury resulting from such death,* to those persons who may be entitled to such damages when recovered *and also* damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such deceased person during the period intervening between the time of the inflicting of such injuries and his death." (Emphasis added.) to read as follows:

"(2) Every such action shall be brought by, and in the names of, the personal representatives of such deceased person, and in every such action the court or jury may give such damages, as, the court or jury, shall deem fair and just, *under all of the circumstances* to those persons who may be entitled to such damages when recovered including damages for the reasonable medical, hospital, funeral and burial expenses for which the estate is liable and reasonable compensation for the pain and suffering, while conscious, undergone by such de-

decision in *Bradfield v Estate of Burgess,* 62 Mich App 345; 233 NW2d 541, *lv den,* 395 Mich 803 (1975).[2]

Plaintiff contends that evidence of remarriage is absolutely inadmissible, citing and relying upon the bases articulated in *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965). More particularly, plaintiff maintains, in conformity with *Bunda,* that such evidence is precluded by the collateral source doctrine, constitutes an irrelevant subsequent event because all damages accrue at the date of decedent's death, and lacks a rational foundation for admissibility.

The resolution of this controversy is not yielded definitively from an examination of prior case precedent.[3] However, the *Bunda* rationale is most persuasive in its analysis, and we adopt its founda-

ceased person during the period intervening between the time of the inflicting of such injuries and his death." (Emphasis added.)

Additionally, the amendment added the following express provision:

"The amount of damages recoverable by civil action for death caused by the wrongful act, neglect or fault of another may also include recovery for the loss of the society and companionship of the deceased."

Defendants predicate admissibility pursuant to the revised statute on the language "under all the circumstances."

[2] This decision merely reiterated the holding in *Thompson v Peters,* 26 Mich App 590; 182 NW2d 763 (1970), *rev'd on other grounds,* 386 Mich 532; 194 NW2d 301 (1972). *Thompson* held that evidence of the plaintiff-spouse's remarriage was inadmissible, but added the proviso "absent a proper showing of its relevancy and materiality to some issue or issues in the case". *Id.* at 598; 182 NW2d 767. Apparently, in the instant case, defendants rely upon the implication of the proviso to reason that such evidence is relevant to damages for loss of society and companionship.

[3] *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965), was decided long before the statutory amendments applicable to the case under review. Similarily, *Bradfield v Estate of Burgess,* 62 Mich App 345; 233 NW2d 541, *lv den,* 395 Mich 803 (1975), involved a cause of action accruing before the amendment with which we are here concerned. Another case decided by this Court, *Hollis v Abraham,* 67 Mich App 426; 241 NW2d 231 (1975), reached the same conclusion as *Bunda* and *Bradfield,* but made the rule of inadmissibility applicable in dramshop actions.

tional principles to conclude that evidence of a plaintiff-spouse's remarriage is inadmissible in a wrongful death action on the issue of damages for loss of the decedent's society and companionship.

A litany of authority from other jurisdictions indicates that a rule of inadmissibility has attained almost universal acceptance. See Annotation, 87 ALR2d 252 (1963), and supplements thereto. Further, that exhaustive account dispels the defendants' assertion that a recent trend signifies a movement toward admissibility of such evidence.[4]

We are, furthermore, unpersuaded by defendants' interpretation of the amendatory language "under all of the circumstances * * * " as being indicative of a legislative intent that evidence of remarriage be admissible. Given the posture of decisional law at the time of the 1971 amendment, an opposite conclusion is more tenable.

At that time the Supreme Court had rejected loss of society and companionship as a compensable injury; yet the rule of inadmissibility as to a surviving spouse's remarriage was extant. The Legislature expressly altered the former holding, but gave no explicit indication of its position on the latter. If the Legislature intended a change in this evidentiary rule, it would not have so obliquely accomplished such result. Our conclusion is that a diametric legislative intent is exceedingly more plausible.

Any remaining doubt as to the merit of a rule of

[4] Indeed, our research has disclosed only two American jurisdictions opting for a rule of admissibility. *See Campbell v Schmidt,* 195 So 2d 87 (Miss, 1967), and *Jensen v Heritage Mutual Ins Co,* 23 Wis 2d 344; 127 NW2d 228 (1964). Neither case is comparable in the comprehensiveness of its analysis to the decision of our Supreme Court in *Bunda v Hardwick,* 376 Mich 640; 138 NW2d 305 (1965). Nor can the existence of two cases of relatively early vintage be deemed to signify a trend in American jurisprudence.

inadmissibility of a surviving spouse's remarriage is extinguished upon consideration of the nature of the loss for which we seek to provide recompense. If there be any disconcerting foible in the character of American jurisprudence, it is that such personal losses as the society and companionship of a deceased family member are relegated to compensability in terms of currency. Yet it appears that no alternative is available.

The myriad of facets that comprise an emotional relationship between persons defies specification. To compensate the survivor of such relationship for its termination by the negligence of another must, perhaps of necessity, devolve upon the intuitive notion of the trier of fact. Permitting the introduction of evidence that another relationship was formed to mitigate such damages would place an imponderable burden upon the evaluation process, making the task beyond the capability of the fact-finder. Further, such a rule is necessarily premised upon the assumption that human beings are interchangeable, a type of fungible commodity. This premise is offensive to our conception of human individuality.

We, therefore, conclude that the trial court erroneously denied plaintiff's motion for a protective order. This case is remanded for trial with instructions that the plaintiff be granted a protective order to preclude introduction of evidence of her remarriage.

Reversed and remanded. Costs to plaintiff.