Jerry GROESBECK, Administrator of the Estate of Brenda Groesbeck, Deceased, Appellant,

v.

John G. NAPIER and Richard Bondi, Appellees.

No. 61400.

Supreme Court of Iowa.

Feb. 21, 1979.

Steven K. Warbasse and William C. Ball of Ball & Nagle, P. C., Waterloo, for appellant.

W. David Tyler of Swisher & Cohrt, Waterloo, for appellee Napier.

John K. Von Lackum, Jr., of Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for appellee Bondi.

REES, Justice.

We granted application of plaintiff Jerry Groesbeck, administrator of the estate of Brenda Groesbeck, deceased, for permission to perfect an interlocutory appeal from the ruling of the trial court on his application for separate adjudication of points of law.

We reverse and remand for further proceedings.

Plaintiff Groesbeck is the surviving spouse of Brenda Groesbeck and the administrator of her estate. On April 19, 1975, Groesbeck, as administrator, instituted the within action alleging Brenda Groesbeck died on April 17, 1973, as the consequence of the professional negligence of the defendants, Doctors Richard Bondi and John Napier.

Trial was set for November 8, 1977. Prior to said date, but subsequent to the filing of the petition, Groesbeck married one Cherine Groesbeck on March 12, 1977. On July 1, 1975, § 147.136 of the Code, which partially abrogates the collateral source rule in measuring damages in medical malpractice actions, became effective. Prior to trial, motions in limine were filed by both parties. In the motion filed by plaintiff, Groesbeck asked the court to limit references to collateral sources of payment available to the plaintiff relating to the death of his wife and references to his remarriage. The defendant Bondi, in his motion in limine, sought to limit the testimony of the plaintiff's economics expert witness regarding the value of Brenda Groesbeck's services as a housewife, to the time period prior to March 12, 1977, the date of plaintiff's remarriage, contending that § 147.136, The Code, applies and limits damages to actual economic losses not replaced from another source, in this case the plaintiff's remarriage. The trial court overruled Groesbeck's motion in limine and sustained Bondi's.

On November 10, 1977 Groesbeck filed this application for adjudication of points of law, pursuant to rule 105, Rules of Civil Procedure, requesting rulings on (1) the retroactive application of § 147.136; (2) the constitutionality of § 147.136; (3) the applicability of § 147.136 to plaintiff's remarriage; and (4) the propriety of questioning the jury panel as to their acquaintance with the plaintiff's present wife, Cherine Groesbeck. In its ruling on said application, the trial court found: (1) the statute to be remedial and thus retroactive in applica-

tion; (2) the statute to be constitutional in the face of due process and equal protection challenges; (3) remarriage to be a "source" under § 147.136 from which the loss of services are replaced; and (4) that the plaintiff's remarriage could be mentioned during the voir dire examination of prospective jurors. From the trial court's ruling on the application for separate adjudication of law points, plaintiff made application to this court for permission to appeal in advance of final judgment, said application being granted on January 5, 1978.

The plaintiff states the following issues for review:

(1) Did the trial court err in its holding that § 147.136, The Code, effective July 1, 1975, is remedial and retrospective in effect, thus applicable to this cause of action, arising out of circumstances occurring in April, 1973, the petition in this case having been filed April 9, 1975?

(2) Did the trial court err in its holding that § 147.136, The Code, does not create certain classifications which are arbitrarily and irrationally drawn and bear no substantial relationship to a legitimate governmental interest, and thus does not offend the equal protection clauses of the Iowa and federal constitutions?

(3) That in the event the statute is not applied retrospectively, did the trial court err in holding that evidence of the remarriage of the plaintiff is inadmissible on the damage issues raised by plaintiff's petition, based upon the alleged wrongful death of plaintiff's former wife?

(4) Did the trial court err in holding that it is appropriate on voir dire examination of prospective jurors to inquire as to their relationship to or acquaintance with the plaintiff's present wife?

■ I. The trial court found § 147.136, The Code, to be remedial in nature and thus retrospective in application. Section 147.-136 became effective July 1, 1975. The petition in this case was filed in April, 1975, and the appellant argues that the trial court erred in its ruling and for reasons we discuss infra, we agree.

In its ruling, the trial court made reference to the case of *Schmitt v. Jenkins Truck Lines, Inc.,* 260 Iowa 556, 149 N.W.2d 789, in support of its ruling. *Schmitt* was decided in 1967, prior to the 1971 effective date of § 4.5, The Code, which states: "A statute is presumed to be prospective in its operation unless expressly made retrospective." Although § 4.5, The Code, was cited in support of a finding of non-retrospectivity in *In the Matter of the Estate of Parsons,* 272 N.W.2d 16 (1978), we have not ruled upon the scope of § 4.5, generally. In 82 C.J.S. *Statutes* § 421, page 998, the following appears:

> "General statutory provisions to the effect that no law is to be construed as retroactive unless clearly so intended by the legislature, . . . , have been held to apply to all laws without any distinction between laws pertaining to substantive rights and those relating to procedure."

The Supreme Court of Minnesota, in construing a similar statutory provision, has concluded that the presumption applies to both substantive and remedial statutes, *Cooper v. Watson,* 187 N.W.2d 689 (Minn.); *Ekstrom v. Harmon,* 98 N.W.2d 241 (Minn.). The Minnesota statute which was construed by the court in the cited cases is § 645.21 which provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended by the legislature."

In our *Parsons* opinion, referred to above, we did not go so far, basing the decision largely upon the "vested rights" exception to the retrospective application of remedial statutes. While we do not find § 4.5 to be an absolute bar to retrospective application of a statute, we conclude the presumption established therein, at a minimum, heightens the pre-existing presumption against retroactivity.

In conjunction with the presumption against retrospectivity, prior pronouncements of this court support a ruling against non-retroactivity. We have permitted statutes to be applied retrospectively when they provide an additional remedy to that already existing, *State ex rel. Turner v. Lim-*

*brecht,* 246 N.W.2d 330 (Iowa 1976); or providing a remedy for an already existing loss, *Schmitt v. Jenkins,* supra, 260 Iowa at 561, 149 N.W.2d at 792. However, when a remedy is eliminated or limited by a statute, we have found the statute to be substantive and not procedural, *Moose v. Rich,* 253 N.W.2d 565 (Iowa 1977). The following language from *Moose* is illustrative:

> "It is obvious the amendment serves to limit the right of an employee to receive compensation from a co-employee. This limitation is substantive, not procedural. Furthermore, it is not remedial in that it does not provide for redress of wrongs, but rather makes a policy decision to limit the redress available. * * *" See 253 N.W.2d at 572.

A similar conclusion was reached by the Supreme Court of Oregon in *Perkins v. Willamette Industries, Inc.,* 542 P.2d 473, 476.

Section 147.136, The Code, would at least partially abrogate the collateral source rule which has been adopted in Iowa. See *Clark v. Berry Seed Co.,* 225 Iowa 262, 280 N.W. 505 (amount of recovery not mitigated by lost wages or medical expenses gratuitously paid by third party), and *Rigby v. Eastman,* 217 N.W.2d 604 (Iowa 1974), (amount of damages not mitigated by payments under the Workmen's Compensation Act or the Social Security Act). In so partially abrogating the collateral source rule, § 147.136 clearly "makes a policy decision to limit the redress available." Thus, on the basis of *Moose v. Rich* and § 4.5, we hold § 147.136 to be prospective in application and conclude the trial court erred in applying the statute in the matter before us here. An analogous result was reached by the Ohio Court of Common Pleas regarding medical malpractice legislation, although exclusively on statutory grounds similar to our § 4.5, in *Graley v. Satayatham,* 343 N.E.2d 832, 838. See also *Bradfield v. Administrator or Personal Representative of Estate of Burgess,* 233 N.W.2d 541, in which the Michigan Supreme Court held an amendment to the Michigan Wrongful Death Act regarding damages and remarriage nonretroactive.

II. Due to the resolution of the first issue and our conclusion that § 147.136 is inapplicable to the facts of the present case, the constitutionality of § 147.136 is not properly before us at this time and will not be resolved until the issue has been raised in the proper adversary context.

■ III. We now consider whether the trial court erred in its holding that evidence of the plaintiff's remarriage was admissible on the damage issue raised by the plaintiff's petition and based upon the alleged wrongful death of the plaintiff's decedent.

Although the central question in the dispute arises from the trial court's interpretation of § 147.136, the general question of the admissibility of evidence as to damages in a wrongful death action appears to be a question of first impression in this jurisdiction. We conclude that the existing case law in this state on the collateral source rule and the results reached by the overwhelming majority of jurisdictions in addressing the precise issue mandate a holding that evidence of a plaintiff's remarriage should not be admissible in a wrongful death action for the death of a spouse.

Almost all the courts of our sister jurisdictions which have addressed the issue have held that evidence of remarriage of a surviving spouse is inadmissible on the issue of mitigation of the surviving spouse's damages for loss of services and support from a deceased spouse. The annotation at 87 A.L. R.2d 252 lists 24 jurisdictions which so hold, with the states of Wisconsin and Mississippi being the only exceptions, *Jensen v. Heritage Mutual Insurance Co.,* 127 N.W.2d 228 (Wis.); *Campbell v. Schmidt,* 195 So.2d 87 (Miss.). At one time the Michigan court held in favor of the admission of such evidence, *Sipes v. Michigan Central R. R. Co.,* 231 Mich. 404, 204 N.W. 84, but *Sipes* has since been overruled in *Bunda v. Hardwick,* 376 Mich. 640, 138 N.W.2d 305. In *Bunda,* supra, 138 N.W.2d at 311, the Michigan Supreme Court noted, "No rational argument can be made that such evidence is relevant . . . ."

An examination of the cases subscribing to the majority position leads to the conclu-

sion that there are two basic reasons for such an application of the rule: (1) the cause of action arises at the time of the decedent's death, and the damages are to be determined as of that time, *Wiesel v. Cicerone,* 261 A.2d 889, 895 (Rhode Island); *Reynolds v. Willis,* 209 A.2d 760 (Delaware); *Benwell v. Dean,* 249 Cal.App.2d 345, 57 Cal.Rptr. 394; [see also Dobbs, Remedies, § 8.6 at page 568 (1973)]; and (2) the rule providing for mitigation of damages on account of the remarriage of the surviving spouse is highly speculative, involving a comparison of the prospective earnings and services of the new spouse with those of the deceased spouse, *Smyer v. Gaines,* 332 So.2d 655 (Fla.App.); *City of Rome,* 48 F.2d 333 (S.D.N.Y.); *Gallo v. Southern Pacific Co.,* 43 Cal.App.2d 339, 110 P.2d 1062; *Reynolds v. Willis,* supra; *Bunda v. Hardwick,* supra; *Stuart v. Consolidated Foods Corporation,* 496 P.2d 527 (Washington). This latter rationale is best illustrated by the opinion of the court in *The City of Rome,* 48 F.2d at 338:

> "Under such circumstances I have not stopped a widow's pecuniary loss at the date of her remarriage. It would be pure assumption to do so; there is no evidence before me to indicate whether she is as well off pecuniarily, or better or worse, by reason of her remarriage. Nor do I think that any such consideration would be relevant. It may often happen that, by reason of inheritance, or insurance, or by reason of her own industry and superior capacity, a widow may be much better off pecuniarily after her husband's death than she had ever been in his lifetime. No one has ever suggested that such considerations must be taken into account in computing her pecuniary loss. Her remarriage is analogous. The fundamental question is, not her financial situation after her husband's death, but what she might reasonably have expected to receive from him had he lived."

Such reasoning is compelling and provides a sound basis for the result we reach in this case.

Although remarriage has not itself been termed a collateral source, several courts have found the rationale underlying the collateral source rule to support, if not directly then by analogy, the exclusion of evidence of the remarriage of the surviving spouse. *Bunda v. Hardwick,* supra at 311; *Richardson v. Holmes,* 525 S.W.2d 293, 299 (Texas Court of Civil Appeals); *Reynolds v. Willis,* supra at 763. The adoption of the collateral source rule by this jurisdiction, that a tortfeasor's obligation to make restitution for the injury he or she has caused is undiminished by any compensation received by the injured party from a collateral source, as noted in division I of this opinion, provides additional support for the position adopted in this opinion.

IV. In light of the result reached above, it is evident some limitation on the scope of voir dire examination of prospective jurors concerning the fact of plaintiff's remarriage is appropriate. Courts of several other jurisdictions have concluded that the remarriage of a plaintiff need not be disclosed in conducting voir dire examination of prospective jurors. *Wiesel v. Cicerone,* supra; *Rodak v. Fury,* 298 N.Y.S.2d 50; *Bradfield v. Administrator or Personal Representative of Estate of Burgess,* supra. In those jurisdictions the new spouse is permitted to be mentioned by name to the prospective jurors without reference to the spousal relationship.

Courts of other jurisdictions addressing the issue have permitted direct reference to the plaintiff's remarriage during voir dire supplemented by an instruction directing the jury to disregard the fact of remarriage when considering the issue of damages. *Richardson v. Holmes,* supra at 299; *Glick v. Allstate Insurance Co.,* 435 S.W.2d 17, 23 (Kansas City Court of Appeals); *Mulvey v. Illinois Bell Telephone Co.,* 294 N.E.2d 689 (Ill.). Such an approach, in addition to being straightforward, avoids the potential difficulties of situations when the plaintiff's remarriage involves a change of name. It also serves to clarify the legal implications of the remarriage for the benefit of the jury, an advantage nonexistent for jurors who are able to infer the plaintiff's remar-

riage from the voir dire examination under the alternative process.

We find the latter approach to be both more functional and legally informative, and hold that mention of the plaintiff's remarriage may be made during the voir dire examination of prospective jurors. The jurors should be instructed to disregard the remarriage when considering the matter of damages.

V. The rulings of the trial court on plaintiff's motion for adjudication of points of law must be reversed and the case remanded for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

All Justices concur except McGIVERIN, J., who takes no part.