DALM *v.* BRYANT PAPER CO.[1]

1. MASTER AND SERVANT—MINORS—STATUTES.
   A child under sixteen years of age, employed in a manufacturing establishment at labor wherein danger to life and limb is involved, does not assume the risk of a fellow-servant's negligence, under Act No. 113, Pub. Acts 1901.

2. SAME.
   Where the child was first employed to see that paper being rolled into sheets wound evenly on the rollers, and he was sent by another employé on the machine to take out damaged sheets from the machinery, which caught the paper and drew his hands between the rollers, the fellow employé in giving such directions represented the master.

3. SAME—ASSUMPTION OF RISK.
   The doctrine of assumed risk, being predicated on a contractual relation, is not binding upon a child employed in violation of the statute.

4. SAME—WARNING AND INSTRUCTING SERVANTS.
   Failure to warn and instruct the servant regarding dangers attendant upon the work at which he was engaged at the time of his injury, is not excused by general instructions regarding the danger of the other work at which he was first employed.

[1] Rehearing denied November 5, 1909.

5. TRIAL—ARGUMENT—INSTRUCTIONS TO JURY.
    The jury may be instructed that they are to be guided by the
      evidence, not by statements of counsel concerning it.

Error to Kalamazoo; Adams, J.  Submitted October
15, 1908.  (Docket No. 96.)  Decided July 15, 1909.

Case by Jacob Dalm, by next friend, against the Bry-
ant Paper Company for personal injuries.  A judgment
for plaintiff is reviewed by defendant on writ of error.
Affirmed.

*E. M. Irish* and *Fred L. Vandeveer*, for appellant.

*D. O. French*, for appellee.

McALVAY, J.  Plaintiff, by his next friend, brought
this action for damages against defendant, a paper manu-
facturing corporation, for personal injuries received while
in its employment.  Plaintiff was between 15 and 16
years of age.  He was employed on a paper machine in
the plant of defendant, April 30, 1907, as a "winder
boy."  His injury occurred on May 13th following, while
he was between what is known as the "calender
stacks," taking out "broke" paper, which breaks while
going through the rollers of the calender stacks, and be-
comes torn, tangled, and sometimes cut into pieces, and
falls upon the floor between them.  In this part of de-
fendant's plant were three paper machines, the one in
question being a machine extending nearly the entire
length of the building, which at the "wet" end re-
ceives the pulp, and, carrying it along over and through
the machinery in a continuous sheet, finally delivers it at
the calender stacks for the purpose of finishing.  These
stacks consist of rollers, one above the other to the height
of about 12 feet.  The machine manufactures about 200
feet of paper per minute.  The stacks are 5 feet apart.
The paper passes between the several rollers of the first
stack, and then across to the second stack, and through its
rollers, where it is ironed smooth and finished.  After

passing through the last calender stack, it is slit the required width, and goes upon the winders, and is wound into rolls. The alleged duties of a "winder boy" are to watch the rolls, and see that they wind evenly. He is provided with a stick to press upon the paper rolls for that purpose. Plaintiff was injured between the calender stacks where he had gone to remove "broke." He had taken up an armful to bring it out, and the rollers caught the paper, and suddenly jerked his hands between them and injured them severely and permanently, whereby he lost one and the other was rendered almost useless. At the time plaintiff was employed, Mr. Milham was the manager of the plant. Mr. Buss was general superintendent. Mr. Camp was under Mr. Buss, and had general supervision and charge of this department containing three paper machines, including the one in question. Plaintiff was hired by Camp. He recently had come from Holland, and understood little of the English language. Mr. Camp instructed him in his duties relative to the winding machine. He also attempted to explain to him the danger of injury from getting his fingers between the rollers in the calender stacks. On this particular paper machine Martin Nolan was machine tender in charge. The crew consisted of himself, his son John Nolan as first tender, his son William Nolan as second tender, and plaintiff as winder boy. The trial resulted in a substantial verdict for plaintiff.

Defendant asks for a reversal upon errors assigned. The first error relied upon is the refusal of the court to grant defendant's motion for an instructed verdict, upon the ground that there was no evidence in the case showing any negligence on the part of defendant. The declaration as first filed in the case alleged that plaintiff was employed as a winder boy by defendant, and was called from his work, and, contrary to statute, ordered to take "broke" from between the calender stacks, which was employment dangerous to life and limb, without instruction or warning as to the dangers attending such work.

An amended declaration was filed, charging that the hiring was prohibited by statute, and the employment dangerous to life and limb, and charged gross, wilful, and wanton negligence in requiring the plaintiff to take "broke" from between the calender stacks, without instructions or warning as to dangers. The case on the part of plaintiff was tried upon the theory of amended declaration, above briefly stated. The theory and claim of the defendant was that the hiring was lawful, and made after the father had furnished the statutory statement of plaintiff's age; that the employment of a winder boy is not dangerous to life and limb, and that he went between the calender stacks contrary to instructions, and without the direction, knowledge, or consent of anyone in authority, upon the order of a fellow-servant, and with knowledge of the danger. The plaintiff's testimony was that he was first told to go between these stacks and take out the "broke" by Martin Nolan, his "boss," and later by Nolan and his sons, who belonged to the machine crew. He testified that no person except Nolan, the tender in charge of this paper machine, or the two men (his sons) next under him, ever told him to do this work, and that he was ordered to do that work several times.

It is urged by defendant that the negligence, if any, was that of a fellow-servant, and consequently defendant cannot be held liable. The trial court held that the Nolans were fellow-servants with plaintiff. While such holding was favorable to the contention of defendant, and no error could be assigned upon it, yet if the question of the negligence of a fellow-servant is not in the case, and Nolan, the head tender on this machine, was giving orders to plaintiff as to the work to be done by him, as the representative of defendant, the court was mistaken in classifying Martin Nolan as a fellow-servant of plaintiff. The testimony of the general manager shows that Martin Nolan had general charge of this machine and those employed on the machine, and told them what to do. It is contended by plaintiff that this employment was pro-

hibited by the statute referred to, being section 3, Act No. 113, Pub. Acts 1901, which provides:

"No child under the age of sixteen years shall be employed by any person, firm or corporation conducting any manufacturing establishment in this State at employment whereby its life and limb is endangered.  *  *  *"

The requirements of this statute, the duty resting upon the employer under it, and the liability for neglect of such duty are discussed in the cases cited below.

Plaintiff's case as made tends to prove that Martin Nolan, three or four days after plaintiff went to work, ordered him to take the "broke" out from between the calender stacks, and that one of his sons then took him by the arm and led him in there and showed him what was meant by the order. This is disputed, but it makes it a question of fact for the jury, if material. It is clear from the record that this was work dangerous to life and limb. No instructions were given to plaintiff as to dangers attending this particular work. Mr. Camp, on the second day, had shown him danger from injury if his fingers got between these rollers, but nothing whatever relative to taking out "broke." In fact, it is contended that taking out "broke" was not within the scope of his employment as a "winder boy." Under the statute he could not be employed at such work by reason of his age. Can it be said, even if the work of the winder boy in this manufactory was without danger to life and limb, which we do not determine, that he can be required to do this dangerous work, and thereby become a fellow-servant with the person ordering him to do it? See *Syneszewski* v. *Schmidt*, 153 Mich. 438 (116 N. W. 1107). If it may be done, then the duty imposed by the statute, and liability for neglect of such duty, may in every case be avoided. Nor could plaintiff be held to have assumed the risk, for the reason that assumption of risk is always predicated upon a contractual relation. It follows, from the showing upon the record, that Martin Nolan in his capacity as tender in charge of this machine

and its entire crew, in giving orders to plaintiff to do this work at which he was injured, acted as the representative of the defendant. The order of Nolan was an act of authority, exercised concerning a positive duty which could not be delegated. These conclusions are supported by previous decisions of this court. See *Syneszewski* v. *Schmidt, supra; Sipes* v. *Michigan Starch Co.*, 137 Mich. 258 (100 N. W. 447); *Sterling* v. *Union Carbide Co.*, 142 Mich. 284 (105 N. W. 755); *Beghold* v. *Auto Body Co.*, 149 Mich. 14 (112 N. W. 691, 14 L. R. A. [N. S.] 609). The fellow-servant question is then eliminated from the case. The court was not in error in denying defendant's motion for an instructed verdict.

This conclusion makes it unnecessary to consider the error assigned to the admission of the testimony of witness Leggett relative to the duties of a "winder boy," and also upon all the other rulings of the court upon the rejection of certain testimony of defendant's witnesses relative to the duties of the operators of this machine, and who of them could give orders. Such rulings were without prejudice to defendant. The requests to charge, which were not given, under our holding become immaterial.

It is claimed that the court erred in charging the jury:

"It is admitted, I think, in the case that the defendant gave the plaintiff no instructions as to the dangers which he would be liable to meet in removing the 'broke,' etc. *   *   *"

The position taken by defendant on the trial warranted such charge. Its claim was that taking out "broke" was not a duty of plaintiff; that he had no right to be between the calenders. In the testimony of defendant's witnesses no mention is made of taking out "broke" when instructions were given plaintiff. These instructions, as far as the calenders were concerned, in giving them their broadest signification, only notified plaintiff of danger in getting his fingers between the rollers, and to keep away from the stacks. The later order to plaintiff, by the rep-

resentative of defendant, to go in there and take out "broke" also eliminates this contention of defendant as to this portion of the charge.

The court in one sentence of his charge said:

"You are not to take as true anything that the attorneys have stated as to what the evidence is in the case."

Error is assigned upon it. No discussion is required, for the reason that the court, proceeding, said:

"It is for you to say what it is. It has been reported to you. You are the judges of it, and you are to use your own judgment as to what it is, whether the attorneys have stated it correctly or not. If they have not, you are to disregard it. In other words, you are to be governed by the testimony in the case, not by what counsel say the evidence is. That applies to counsel on both sides."

The plaintiff made out a case to be submitted to the jury, and defendant cannot complain on account of holdings of the court which were too favorable in its behalf. We find no prejudicial error in the case.

The judgment is affirmed.

BLAIR, C. J., and GRANT, HOOKER, and MOORE, JJ., concurred.