KIRK v FORD MOTOR COMPANY

Docket No. 63576. Submitted July 26, 1983, at Detroit.—Decided
   December 2, 1985. Leave to appeal applied for.

   Plaintiff, Harold E. Kirk, administrator of the estate of Timothy
   H. Kirk, deceased, brought a wrongful death action against
   defendant, Ford Motor Company, alleging that the negligent
   design and placement of the gas tank of the automobile which
   Timothy Kirk was driving resulted in fatal burn injuries when
   it was involved in an accident. The Wayne Circuit Court,
   Henry J. Szymanski, J., entered a judgment on a jury verdict
   in favor of the plaintiff. The jury's award of $3,500,000 was
   reduced by ten percent because the jury found the decedent to
   have been ten percent negligent. Defendant appealed, alleging
   several errors. *Held:*

   1. The trial court properly refused to instruct the jury
   regarding the decedent's failure to use a seat belt. The "seat
   belt" defense was not available to show contributory negligence
   or failure to mitigate damages for accidents occurring prior to
   July, 1985.

   2. The trial court did not abuse its discretion in admitting
   evidence of certain proposed government standards of crash-
   worthiness, even though those standards were not in effect at
   the time of the accident. The standards were not offered to
   prove liability; rather, they were relevant to show why defen-
   dant chose the design it did. The standards were admissible on
   that basis.

   3. Evidence regarding alleged defects other than the fuel

REFERENCES

Am Jur 2d, Automobiles and Highway Traffic §§ 567, 602.

Am Jur 2d, Damages §§ 200 *et seq.,* 366 *et seq.*

Am Jur 2d, Evidence §§ 250, 269, 801, 881 *et seq.*

Am Jur 2d, Trial §§ 317, 589, 590.

Excessiveness or inadequacy of punitive damages awarded in per-
   sonal injury or death cases. 35 ALR4th 441.

Automobile occupant's failure to use seatbelt as contributory negli-
   gence. 92 ALR3d 9.

Nonuse of seatbelt as failure to mitigate damages. 80 ALR3d 1033.

Admissibility, as against hearsay objection, of report of tests or
   experiments carried out by independent third party. 19 ALR3d
   1008.

tank design was admissible to show that this particular accident was not the only type of circumstance which could result in injury caused by the fuel system design. The design of the entire automobile had to be ascertained.

4. Crash-test results, offered to illustrate certain general principles and not to recreate the accident in question, were admissible for that purpose. Similarly, certain motion-picture films were properly admitted into evidence to illustrate the vulnerability of the type of fuel tank installation used on decedent's vehicle.

5. Defendant failed to specify its objections to the admission of several documents offered by plaintiff, thereby precluding appellate review.

6. Plaintiff offered the testimony of a witness regarding alleged steering problems encountered on the type of vehicle involved in the accident, as rebuttal testimoney to evidence presented by defendant to show that the decedent was at fault for the accident. Admission of this rebuttal testimony, while it may have been more properly presented in plaintiff's case in chief, was, at most, harmless error as the jury did reduce its award based on the decendent's negligence.

7. The amount of the damage award does not "shock the judicial conscience", and the trial court did not abuse its discretion in denying defendant's motion for *remittitur* or for a new trial.

8. The trail court properly refused to instruct the jury on the income tax consequences of a damage award and on exemplary damages.

9. Certain of plaintiff's counsel's arguments to the jury were improper, but the error in allowing the arguments would have been curable upon a proper request from defendant. The failure to request curative instructions precludes reversal on the basis of the improper arguments.

Affirmed.

R. R. LAMB, J., dissented. He would hold that the rebuttal testimony regarding the alleged steering problems, which may or may not have actually affected the decedent's vehicle, introduced a new theory of liability which was neither alleged nor proved during plaintiff's case in chief. This testimony failed to qualify as rebuttal evidence and came as a surprise to defendant. Admission of the testimony was error. Furthermore, the testimony was not relevant because it was not tied to the automobile driven by the decedent, and the probative value of the testimony was outweighed by its prejudicial effect on the jury.

The jury's ten percent reduction of the damage award does not render the error harmless. Judge Lamb would reverse.

OPINION OF THE COURT

1. NEGLIGENCE — SEAT BELTS — AUTOMOBILES — EVIDENCE.

Evidence of a plaintiff's failure to use a seat belt is not admissible as evidence of the plaintiff's contributory negligence or of the plaintiff's failure to mitigate damages for accidents that occurred prior to July, 1985.

2. APPEAL — EVIDENCE — ABUSE OF DISCRETION.

The Court of Appeals will not reverse a trial court's determination that the prejudicial effect of evidence outweighs its probative value or its decision that certain proffered evidence is not relevant unless it is convinced that the trial court's rulings amount to an abuse of discretion.

3. EVIDENCE — EXPERIMENTAL TEST RESULTS.

The decision to admit experimental test results into evidence rests within the trial court's discretion; in order for such results to be admissible, the conditions of the experiment must be sufficiently similar to those invoved in the particular case.

4. EVIDENCE — MOTION PICTURES.

Motion pictures offered to recreate the scene of an accident are not admissible unless they portray conditions almost identical to those prevailing at the time of the accident; however, where a film is not offered for the purpose of duplicating or recreating an acccident, but instead merely to illustrate certain general principles, differences in surrounding conditions are less relevant and do not require the film's exclusion.

5. APPEAL — SPECIFIC OBJECTIONS — PRESERVING QUESTION.

Specific objections to the admission of specific documents must be raised by counsel via appellate brief in order for the Court of Appeals to consider such objections.

6. EVIDENCE — REBUTTAL EVIDENCE.

Rebuttal evidence is that given by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach that evidence; generally, whether evidence which could have been offered in a party's case in chief may be given in rebuttal is a matter within the discretion of the trial court.

7. DAMAGES — WRONGFUL DEATH — SIBLINGS OF DECEDENT.

A decedent's siblings are entitled to damages for loss of compan-

ionship in a wrongful death action even where the decedent is survived by parents or a spouse.

8. DAMAGES — EXCESSIVE DAMAGES.

The appropriate standard of review of an award of damages, where the damages are claimed to be excessive, is whether the amount awarded shocks the judicial conscience.

9. DAMAGES — TAX CONSEQUENCES — JURY INSTRUCTIONS.

A trial court did not err in refusing to instruct a jury on the income tax consequences of an award of damages.

10. APPEAL — ARGUMENT OF COUNSEL — PRESERVING QUESTION.

A litigant has no right to appellate review of a claim of improper argument of counsel unless he has requested a curative instruction or made a motion for a mistrial; however, an appellate court is not barred from correcting substantial errors which were not preserved for review in the trial court.

DISSENT BY R. R. LAMB,J.

11. EVIDENCE — REBUTTAL EVIDENCE.

*The testimony of a witness, offered in rebuttal, which fails to contradict, repel, explain or disprove the other party's proffered evidence and which serves to introduce a totally new issue in the case belongs properly in the party's case in chief, not in rebuttal.*

12. PLEADING — AMENDMENT OF PLEADINGS — THEORY OF CASE.

*Amendments to pleadings are liberally allowed, even to conform the pleadings to the proofs; however, a party may not submit its case to a trier of fact on an entirely different theory than that raised in the pleadings.*

*Darrel Peters,* for plaintiff.

*Harvey, Kruse, Westen & Milan, P.C.* (by *John A. Kruse* and *George W. Steel),* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and WAHLS and R. R. LAMB,* JJ.

D. E. HOLBROOK, JR., P.J. This action arises from a wrongful death action filed by the administrator

* Circuit judge, sitting on the Court of Appeals by assignment.

of the estate of Timothy Kirk against Ford Motor Company alleging that the negligent design and placement of the gas tank resulted in fatal burn injuries when the automobile which Timothy Kirk was driving was involved in an accident. After a two-month jury trial, a verdict of $3,500,000 was returned in favor of plaintiff. Since the jury also found decedent to be ten percent negligent, the award was reduced to $3,150,000. Defendant is appealing as of right and alleges that numerous errors in the admission and exclusion of evidence and arguments of plaintiff's counsel require reversal.

Defendant first argues that it should have been allowed to utilize a jury instruction which stated in part that:

"If you find that a reasonably prudent driver would have used a seat belt, and that he would not have received some or all of his injuries had he used the seat belt, then you may not award any damages for those injuries you find he would not have received had he used the seat belt. The burden of proving that some or all of Mr. Kirk's injuries would not have been received had he used the seat belt rests upon the defendant.

"Therefore, if you find that the decedent was negliegent for not using the seat belt and if you find that plaintiff's decedent's non-use of a seat belt contributed as a proximate cause to his death you will consider this non-use of the seat belt as comparative negligence on the part of plaintiff's decedent."

Extensive argument and briefs have been filed with this Court regarding this instruction. While the instant case has been pending before this Court, other panels have held that the seat belt defense was not available in Michigan. *Schmitzer v Misener-Bennett Ford, Inc,* 135 Mich App 350, 358-360; 354 NW2d 336 (1984), and *DeGraaf v General Motors Corp,* 135 Mich App 141; 352

NW2d 719 (1984). We are aware that the Legislature has recently required the use of seat belts and provided for a limited mitigation of damages for the failure to wear seat belts. 1985 PA 1, MCL 257.710e *et seq.;* MSA 9.2410(5) *et seq.,* effective July 1, 1985. However, this legislation is not retroactive. As the accident and trial occurred long before the effective date of the passage of this act, we do not find the new legislation to be controlling. Accordingly, for accidents that occurred prior to July, 1985,

"We conclude that under our system of comparative negligence, evidence of a plaintiff's failure to use a seat belt is not admissible as evidence of plaintiff's contributory negligence or of plaintiff's failure to mitigate damages." *Schmitzer, supra,* pp 359-360.

Thus we find no eror in the trial court's refusal to give a jury instruction regarding the seat belt defense at the time of the trial.

Defendant contends that the trial court abused its discretion in admitting into evidence proposed government standards of crashworthiness that were never adopted. As the standards were not in effect at the time of the accident, defendant states that MCL 600.2946; MSA 27A.2946 prohibits their admission. Without deciding the merits of that particular argument, we hold that that statute only applies when such evidence is offered for the purpose of proving liability. These standards were not introduced to show that defendant was liable for failure to comply with them, rather they are relevant to show why, after testing and design of vehicles which would meet these standards, defendant abandoned its attempt at providing a safer over-the-axle fuel tank location. The proposed standards were not admitted as exhibits.

We find that this evidence was relevant and therefore was admissible.

"This Court will not reverse a trial judge's determination that the prejudicial effect of evidence outweighs its probative value or his decision that certain proffered evidence is not relevant unless we are convinced that the judge's rulings in these matters amount to an abuse of discretion. See *Aetna Life Ins Co v Brooks*, 96 Mich App 310; 292 NW2d 532 (1980), *Jarecki v Ford Motor Co*, 65 Mich App 78; 237 NW2d 191 (1975)." *Keefer v C R Bard, Inc*, 110 Mich App 563, 568; 313 NW2d 151 (1981).

Ford argues that the introduction of evidence regarding defects which were not related to the particular cause of the accident constituted error. We disagree. This action was based on plaintiff's claim that the fuel tank design was defective. As defendant had no duty to produce a crash-proof automobile, *Rutherford v Chrysler Motors Corp*, 60 Mich App 392; 231 NW2d 413 (1975), and *Dayhuff v General Motors Corp*, 103 Mich App 177, 181; 303 NW2d 179 (1981), *lv den* 412 Mich 914 (1982), it was imperative that plaintiff demonstrate that this was not the only circumstance in which the fuel system design would result in injury or death. Additionally, the design of the auto as a whole had to be ascertained. We find no error in the trial court's decision. *Muniga v General Motors Corp*, 102 Mich App 755, 761; 302 NW2d 565 (1980).

Defendant contends that the crash-test evidence, consisting of reports, films and photos, was inadmissible because plaintiff did not prove that the tests were conducted under conditions substantially similar to those involved in the accident.

"In order for results obtained in out-of-court experiments to be admissible in evidence, the conditions of

the experiment must be sufficiently similar to those involved in the particular case. The decision to admit experimental test results rests within the trial court's sound discretion." *Przeradski v Rexnord, Inc,* 119 Mich App 500, 506; 326 NW2d 541 (1982). (Footnotes omitted.)

However, this evidence did not purport to have been conducted under similar conditions, rather it was to illustrate certain general principles.

"Where motion pictures are offered to recreate the scene of an accident, they are not admissible unless they portray conditions almost identical to those prevailing at the time of the accident itself. *Green v General Motors Corp,* 104 Mich App 447, 449; 304 NW2d 600 (1981). On the other hand, where a film is not offered for the purpose of duplicating or recreating an accident, but instead merely to illustrate certain general principles, differences in surrounding conditions are less relevant and do not require the film's exclusion. *Id."* *Gorelick v Dep't of State Highways,* 127 Mich App 324, 336; 339 NW2d 635 (1983).

Plaintiff was attempting to illustrate the vulnerability of under-the-floor fuel tanks in rear-end collisions and to establish defendant's negligence in the design. Since this evidence showed generalities rather than a specific instance, we find no error in its admission.

"As a general rule, a trial court has broad discretion in ruling on the relevancy of evidence submitted at trial, *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90, 96-97; 284 NW2d 126 (1979), *Orquist v Montgomery Ward,* 37 Mich App 36, 41; 194 NW2d 392 (1971). This Court will not reverse a trial court's decision absent an abuse of discretion. *Wilson, supra,* 97." *Muniga, supra,* p 761.

Defendant has made a blanket objection to the

admission of documents given by Ford to plaintiff pursuant to a discovery order, on the grounds that they are hearsay. These documents are numerous, yet defendant has argued in this appeal its objections as to the documents without specificity. Specific objections to specific documents must be raised by counsel via appellate brief for us to consider such objections. It is for counsel to point out specific errors to this Court. *Couple-Gear Freight Wheel Co v Lake Shore & M S R Co,* 196 Mich 429, 433-434; 163 NW 25 (1917). "Failure to object specifically and for proper reasons to the admission of evidence precludes appellate review unless there is manifest injustice." *George v Travelers Indemnity Co,* 81 Mich App 106, 116; 265 NW2d 59 (1978).

Ford alleges that the trial court abused its discretion in permitting rebuttal testimony. Our review of the record reveals that decedent's contributory negligence was at issue. Defendant introduced evidence and testimony to show that decedent was at fault for the accident. Plaintiff then produced a rebuttal witness to testify that steering problems were common to the type of car in question and to introduce the psossibility of a defect as the cause of the accident.

"The rule of rebuttal evidence is stated in *People v Utter,* 217 Mich 74, 83; 185 NW 830, 833-834 (1921):

" 'Rebuttal evidence is broadly defined as that given by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same. In paractical application the line of demarcation between rebuttal evidence and that which should properly be given in chief before the prosecution rests is frequently more or less obscure, and it is a general rule that whether evidence which could have been offered before resting may be given in rebuttal is a matter within the discretion of the trial court.'

"See also *Litle v Grieve,* 25 Mich App 107; 181 NW2d 5 (1970); *Gonzalez v Hoffman,* 9 Mich App 522; 157 NW2d 475 (1968)." *Barrows v Grand Rapids Real Estate Board,* 51 Mich App 75, 97; 214 NW2d 532 (1974).

While this testimony might have been more properly presented in plaintiff's case in chief, we cannot say that the trial court abused its discretion in permitting such testimony. As the jury did deduct ten percent of the award for decedent's negligence, we believe any error was harmless, GCR 1963, 529.1, and that no manifest injustice occurred.

Defendant addditionally contends that its motion for *remittitur* or for a new trial should have been granted as the damage award was excessive, contained punitive damages, and was influenced by passion, prejudice and sympathy as well as being enhanced by errors in the proceedings. We do not agree.

The decedent's siblings are entitled to damages for loss of companionship even when the person is survived by parents or a spouse. *Crystal v Hubbard,* 414 Mich 297; 324 NW2d 869 (1982).

Defendant in the instant case has argued as did the defendant in *May v Grosse Pointe Park,* 122 Mich App 295, 297; 332 NW2d 411 (1982):

"On appeal, defendant first alleges that the verdict was excessive and influenced by passion or prejudice and that the trial judge abused his discretion in denying the motion for new trial or *remittitur.* The appropriate standard of review is the 'shock the judicial conscience' standard. *Burnett v Mackworth G Rees, Inc,* 109 Mich App 547; 311 NW2d 417 (1981). If the amount awarded does not 'shock the judicial conscience', the trial judge has not abused his discretion in denying the motion for a new trial or *remittitur.*"

This Court went on to say that:

"The wrongful death act provides for compensation for the loss of society and companionship. *Bradfield v Estate of Burgess,* 62 Mich App 345, 350-351; 233 NW2d 541, 544 (1975). Just as no marketplace formula exists to mathematically calculate pain and suffering, no precise formula exists for the loss of society and companionship. Those determinations are for the jury, and a reviewing court will not arbitrarily substitute its judgment for that of the factfinder. *Brown v Arnold,* 303 Mich 616, 627; 6 NW2d 914, 918 (1942). Furthermore, placing a monetary value on a human life is at best a nebulous decision-making process which does not lead itself to an exacting type of review." *May, supra,* p 298.

See also *Cryderman v Soo Line R Co,* 78 Mich App 465; 260 NW2d 135 (1977), *lv den* 402 Mich 867 (1978). The amount of the jury award of over $3 million for the loss of society and companionship of a 19-year-old son and brother is within the limits of what reasonable minds might deem just compensation. We cannot say that the trial judge abused his discretion.

Defendant has also argued that it was reversible error not to instruct the jury on the income tax consequences of an award. While this allegation may have some merit in federal cases, Michigan law does not require this. The majority view is not to discuss taxes with the jury. Anno., *Propriety of Taking Income Tax into Consideration in Fixing Damages in Personal Injury or Death Action,* 63 ALR2d 1393, 1408, and *Grant v National Acme Co,* 351 F Supp 972 (WD Mich, 1972).

"Defendant also specifically objects to the court's refusal to instruct the jury as to the tax consequences of any damage award. The law is clear that such an instruction is within the trial court's discretion. Indeed, the majority view apparently favors withholding all reference to income tax consequences." *Grant, supra,* p 979.

The trial court was correct in refusing to instruct the jury on exemplary damages. *King v General Motors Corp*, 136 Mich App 301; 356 NW2d 626 (1984).

Defendant alleges that plaintiff's counsel improperly inflamed the passions of the jury and attempted to influence the jury to impose punitive damages. Our review of the transcript reveals that defendant did object four times during plaintiff's closing argument and over 30 allegations of error are listed in its appeal. While defendant did not make a motion for a mistrial or a curative instruction, which is generally required before we will review on appeal, this requirement is not immutable.

"'* * * a litigant has no *right* to appellate review unless he has requested a curative instruction or made a motion for mistrial. Nevertheless, the rule is not an absolute bar to review, for it does not preclude an appellate court from correcting substantial errors which were not preserved in the trial court.

"Our prior cases have clearly stated that incurable errors are not shielded from appellate review because an attorney fails to request what in that case would be a futile instruction." *Reetz v Kinsman Marine Transit Co*, 416 Mich 97, 100-101; 330 NW2d 638 (1982). (Footnotes omitted.)

While we agree that plaintiff's counsel's remarks were improper, we feel that such error was curable. In the instant case, the trial court gave a *sua sponte* curative instruction. This instruction was identical to that given in *Belue v Uniroyal, Inc*, 114 Mich App 589, 596-597; 319 NW2d 369 (1982):

"Any alleged prejudicial effect of the argument in question was further eliminated by the trial court's instruction to the jury that: 'Arguments, statements, and remarks of attorneys are not evidence, and you

should disregard anything said by an attorney which is
not supported by the evidence or by your own general
knowledge and experience.' See, *e.g., Dalm v Bryant
Paper Co,* 157 Mich 550; 122 NW 257 (1909)."

We fail to find that any substantial prejudice
resulted; any error in the argument was rendered
harmless. While defendant may have been entitled
to a more specific curative instruction, failure to
request it precludes reversal. *Kinsman Marine
Transit, supra,* and *Koepel v St Jospeh Hospital,*
381 Mich 440; 163 NW2d 222 (1968).

While we agree that awarding damages solely to
punish defendant is prohibited in Michigan, *Wil-
lett v Ford Motor Co,* 400 Mich 65; 253 NW2d 111
(1977), we are not convinced that such damages
were included in the award. The jury was in-
structed properly as to what to include in their
award and punitive damages were not an element.
We will not upset the trial court's decision on the
mere speculation that the trial court disregarded
the curative instruction.

Affirmed. Costs to appellee.

WAHLS, J., concurred.

R. R. LAMB, J. *(dissenting).* I respectfully dissent.

The trial court permitted the plaintiff to intro-
duce as rebuttal evidence a new theory of liability
against the defendant after the plaintiff rested his
case. In doing so, the jury was permitted to ponder
whether an automobile manufacturer should be
held liable for a defect which was neither alleged
nor proved by plaintiff during plaintiff's case in
chief.

The lead opinion states:

"Ford alleges that the trial court abused its discretion
in permitting rebuttal testimony. Our review of the

record reveals that decedent's contributory negligence was at issue. Defendant [i.e., Ford] introduced evidence and testimony to show that decedent was at fault for the accident. Plaintiff then produced a rebuttal witness to testify that steering problems were common to the type of car in question and to introduce the possibility of a defect as the cause of the accident.

\* \* \*

"While this testimony might have been more properly presented in plaintiff's case in chief, we cannot say that the trial court abused its discretion in permitting such testimony. As the jury did deduct ten percent of the award for decedent's negligence, we believe any error was harmless, GCR 1963, 529.1, and that no manifest injustice occurred."

I disagree.

The witness whose testimony is in question was Officer Tom Freeman of the Inkster Police Department. That department had owned six, seven, or perhaps even eight Mercury Montegos. The deceased, Timothy Kirk, purchased Cruiser No. 110 from the department at an auction. This vehicle was a 1975 Mercury Montego and had over 88,000 miles on it at the time of the purchase.

On Spetember 22, 1977, at approximately 5:00 p.m., Mr. Kirk was driving westbound on Outer Drive. As he neared the I-94 overpass in Allen Park, his vehicle left the road, swerved, and eventually crashed into the median bridge abutment supporting the I-94 overpass. The vehicle was then struck from behind by an oncoming Chevrolet sedan. Mr. Kirk's vehicle then burst into flames and he died as a result.

On September 12, 1978, plaintiff filed a four-count complaint against defendant for wrongful death alleging (1) negligence, (2) gross negligence, (3) breach of warranty, and (4) product liability. The bases of all four claims were the improper

placement of the vehicle's fuel tank, the failure of defendant to install a flexible bladder liner in the fuel tank, and defendant's failure to adequately perform crash-worthiness tests in relation to the proper placement of the fuel tank.

Plaintiff's claim throughout the trial was that the automobile's fuel system was defectively designed and installed by defendant. At no time during his case in chief did plaintiff introduce evidence or a theory of liability that the deceased's automobile contained other possible defects.

Following plaintiff's case in chief, defendant introduced evidence to support its theory that the deceased had been driving his automobile at an excessive rate of speed which, in turn, not only caused the automobile to crash into the bridge abutment, but also caused him to be struck from behind by the Chevrolet automobile. Defendant contended that it was the combination of these two impacts which actually compromised the integrity of the fuel system, thereby causing the gasoline leakage and subsequent fire.

Plaintiff then called Officer Freeman to the witness stand as a "rebuttal witness". Defense counsel questioned the proposed rebuttal witness and the following testimony was elicited:

"*Q* *[Defense counsel:]* Good morning, officer. I'm George Steel. How are you?

"*A* *[Officer Freeman:]* Okay.

"*Q* You and I talked the other day on the telephone. Do you recall?

"*A* Right.

"*Q* Officer Freeman, you mentioned to me, did you not, on the telephone that you did have some occasions of some steering difficulties with some of the police cruisers; is that correct?

"*A* Yes, sir, I did.

"*Q* This particular vehicle was apparently Cruiser Number 110. Are you familiar with that?

"*A* No, sir.

"*Q* Do you know of any specific problems you had with this steering of this particular vehicle, Cruiser 110, while you were driving that particular vehicle for the Inkster Police Department?

"*A* I can't be specific about that particular vehicle.

"*Q* So any testimony you would give regarding any handling characteristics of this particular vehicle would be speculation?

"*A* It may have been the vehicle that I had problems with, and it may not have. I don't recall. It's been quite some time.

"*Q* [*Defense Counsel:*] Your Honor, I would submit under those questions and answers, that any testimony on the part of Officer Freeman would be speculative."

Plaintiff's counsel was then permitted to elicit further testimony from Officer Freeman that Freeman had experienced some steering problems with all of the department's 1975 Montegos, but Freeman indicated that the degree and nature of those problems differed with each vehicle. In fact, he only experienced great difficulty three times and it was unknown whether this difficulty occurred in the same vehicle or whether it occurred in three different vehicles. More importantly, Freeman could not say whether he had experienced a great deal of steering problems in Cruiser No. 110.

Defense counsel argued that Freeman's testimony was not rebuttal evidence, that it was not probative, and that it opened up a completely new issue and theory in the case. As I review the proposed testimony, I agree with defense counsel's contentions.

In *People v Utter,* 217 Mich 74, 83; 185 NW 830 (1921), the Supreme Court defined what constitutes rebuttal evidence as follows:

"Rebuttal evidence is broadly defined as that given by one party to contradict, repel, explain or disprove evidence produced by the other party and tending directly to weaken or impeach the same. In practical application the line of demarcation between rebuttal evidence and that which should properly be given in chief before the prosecution rests is frequently more or less obscure, and it is a general rule that whether evidence which could have been offered before resting may be given in rebuttal is a matter within the discretion of the trial court."

As I read Freeman's testimony, it fails to contradict, repel, explain or even disprove defendant's proffered evidence of excessive speed as the claimed cause of the accident. It served only to introduce a totally new issue in the case; namely, whether the cause of plaintiff's decedent's accident was a defective steering mechanism. Such a theory belonged in plaintiff's case in chief, not in rebuttal. This theory caught defendant entirely by surprise. Plaintiff never alleged, much less tried to prove during its case in chief, that the deceased's 1975 Mercury Montego had a defective steering assembly. I find that the introduction of this evidence was highly prejudicial. To further highlight the degree of this prejudice, I refer to portions of plaintiff's closing argument:

"We knew [the decedent] was only going 50 miles an hour, maybe a little more. Why did he hit the curb?
"And I told you in my opening statement, I just, I didn't know.
"The only witness I had at that time was Iola Coleman, who said, 'I saw that car go back and forth real funny and I never saw a car do that before.' And I knew she was going to say that.
"And I said to you folks, I said, 'There was something wrong with that car.' And I didn't know where it was going to come from but I knew, I just knew in my heart that there was something wrong with that car because I had—* * *.

"We kept working and working and working, trying to find out what was wrong with the car. And the steering elements of that car had been removed long before it came into our possession by persons unknown to us.

"And Mr. Murphy kept working on it. And finally we said, 'Look. Maybe the guys in Inkster know something about this car.' It was like a last gasp. But it just made sense to us.

\*    \*    \*

"And Tom Freeman, Officer Freeman said, 'Yeah. I had a problem with this car.'

"Do you remember Officer Freeman's testimony?

\*    \*    \*

"And I say to you, ladies and gentlemen, that Officer Freeman has told you and told us very likely what happened to Tim Kirk that day on Outer Drive Highway. Because it makes sense—\*  \*  \*.

"And what makes sense about what happened that day out on Outer Drive Highway? What makes sense? The same thing that happened to Officer Freeman on many, many occasions with all of these cars—And Tim Kirk only had the car since June, and you remember his sister said it had been on blocks for several weeks at her house. He was in the process of changing tires. And he's going down the highway at 50 or 55 miles an hour.

\*    \*    \*

"I'd like to just read you briefly from Officer Freeman's testimony where he asid [sic]: 'I encountered the steering problem in all the vehicles intermittently at different times. A lot of times when you turn corners or went to turn back you wouldn't have the power steering. It would be manual, real hard, harder than if you didn't have any. And the same thing is true sometimes if you're going straight and you want to change lanes or make any adjustments in your steering it would be as though you didn't have it. It would go from being easy to hard; intermittently.[']

" 'It occurred at different times without any reason that I know of.'

\*    \*    \*

"Here's Officer Freeman, who's a trained police officer, trained in the art, among other things, of driving cars. He's a patrolman and has to chase criminals. He had had it happen to him several times and at least he was on his guard for it.

"I ask you, ladies and gentlemen, to consider what happened to Tim Kirk in the last four seconds or five seconds that he had, trying to figure out what was happening to him as he went down Outer Drive at 50 or 55 miles an hour. He suddenly thought he had no steering and he jerked it and hit the curb and he hit that six-inch curb and he bounced off it. He bounced up. Can you imagine what he's thinking? What is happening? What happened to that steering?

\* \* \*

"[A]nd if we had not been able to find Officer Freeman you would have been left without an explanation. But fortunately, you have an explanation and I think it's a good one because it makes sense."

This closing argument illustrates not only how plaintiff intended to use Freeman's testimony, it explains why I cannot find the erroneous admission of this testimony to be harmless.

The purpose of pleadings is to give parties adequate notice of issues that are to be met and to assure that issues raised may be tried fairly by eliminating traps and surprises. Amendments to pleadings are liberally allowed, even to conform the pleadings to the proofs; however, a party may not submit its case to a trier of fact on an entirely different theory. The introduction of this testimony and theory of liability coupled with the arguments based thereon violated these principles.

In addition, I do not believe that Officer Freeman's testimony was probative of a point in issue because he was unable to tie his experiences with some of the police department's six, seven, or eight Mercury Montegos to the automobile being driven by plaintiff's decedent at the time of the accident.

Thus, the testimony lacked any tendency to make the existence of any fact in consequence more probable or less probable than it would have been without the evidence. The evidence was therefore irrelevant and should not have been admitted. MRE 401, 402.

Moreover, even if somehow this evidence could be found to be relevant, its probative value was outweighed by its prejudicial impact on the jury. MRE 403. Freeman testified that he had experienced three near accidents while driving a patrol vehicle and that during two of these near accidents the tires blew out from hitting the curb. Once he almost hit a restaurant building. He explained that this steering problem occurred at slow speeds immediately after making a turn. It was something he could not get used to other than to be careful when driving the vehicle. He said that when the power steering unit would fail, the steering became so difficult that "it was too hard to control", and that when the steering mechanism would suddenly start working again, "it would make you change lanes or go out of your lane, lose control a little bit".

There was no testimony introduced by plaintiff that would indicate that the deceased had been driving at a low rate of speed or that he was making a turn immediately before the accident occurred. On the contrary, the evidence tended to show that the deceased had been driving at a high rate of speed; therefore, the value of Freeman's testimony was substantially diminished. But, at the same time, the jury was allowed to speculate about whether the deceased's vehicle and Freeman's problem vehicle were one and the same. Because Freeman could not identify the deceased's vehicle as the vehicle, or at least one of the vehicles in which he experienced loss of control, I

believe that the jury was confused by the issues and misled by Freeman's testimony. The jury was permitted to decide the case on a theory never alleged or presented by the plaintiff until after plaintiff rested his case. Defendant was not aware of this new theory until it was too late to conduct discovery or to investigate Freeman's claims.

The lead opinion suggests that the jury's ten percent compromise is evidence that the error was harmless. I cannot agree. In fact, it demonstrates that the jury may have accepted at least part of defendant's theory that the deceased had been driving at an excessive rate of speed which, in turn, caused the accident and subsequent fire. Therefore, but for the prejudicial impact of Freeman's testimony, we are left to speculate about what the verdict would have been absent this evidence.

For these reasons, I vote to reverse.